**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAIME MEDRANO and MARIBEL MEDRANO, husband and wife, *Plaintiffs-Appellants*, | No. 11-55412 |
| | D.C. No. 2:10-cv-07285-JHN-PLA |
| v. | |
| FLAGSTAR BANK, FSB, a Federal Savings Bank; EXODUS FINANCIAL CORPORATION, a Nevada corporation formerly known as Doe 1; JANE FOWLER KELLEHER, formerly known as Doe 2; STRATHAM MONTECITO WEST, a California corporation; STRATEGIC SALES AND MARKETING GROUP, a California corporation; JANIS KIM RANDAZZO, individually and responsible managing officer of Strategic Sales and Marketing Group; FERNANDO CORDERO, individually and responsible managing officer of Exodus Financial Corporation; and DORA SENAIDA CORDERO, *Defendants-Appellees*, | OPINION |

and

PROTOFUND MORTGAGE
CORPORATION, a California
corporation,
                    *Defendant*.

Appeal from the United States District Court
for the Central District of California
Jacqueline H. Nguyen, District Judge, Presiding

Argued and Submitted
November 6, 2012—Pasadena, California

Filed December 11, 2012

Before:  Susan P. Graber, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Graber

# SUMMARY[*]

## Real Estate Settlement Procedures Act

The panel affirmed the dismissal of a claim under the Real Estate Settlement Procedures Act by borrowers seeking damages for a mortgage-loan servicer's failure to respond to their inquiries.

Adopting the Seventh Circuit's general approach, the panel held that the borrowers' letters challenging the monthly payment due on their loan were not "qualified written requests" triggering the servicer's duty to respond under 12 U.S.C. § 2605 because the letters did not seek information relating to the servicing of the loan, but rather challenged the loan's terms.

## COUNSEL

Jerome Zamos, Law Offices of Jerome Zamos, Woodland Hills, California, for Plaintiffs-Appellants.

Roland P. Reynolds and Frederick A. Haist, Palmer, Lombardi & Donohue LLP, Los Angeles, California; Dale A. Arakawa and Lisa P. Gruen, Ericksen Arbuthnot, Los Angeles, California; and Carol L. Vallely, Law Office of Carol L. Vallely, Verdugo City, California, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GRABER, Circuit Judge:

The Real Estate Settlement Procedures Act ("RESPA") provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers. Plaintiffs Jaime and Maribel Medrano allege that Defendant Flagstar Bank, FSB, the servicer of their home loan, violated 12 U.S.C. § 2605 because it did not respond adequately to three letters in which they challenged the monthly payment due on their loan. The district court granted Flagstar's motion to dismiss the claim because a servicer must receive a valid "qualified written request" to incur the duty to respond under § 2605, and it determined that the letters were not qualified written requests that triggered that statutory duty. Reviewing de novo, *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir.), *cert. denied*, 132 S. Ct. 456 (2011), we hold that the letters did not trigger the statutory duty to respond and therefore affirm.[1]

In 2009, Plaintiffs entered into a home loan agreement and purchased a house in Los Angeles County. The loan was secured by a deed of trust and, at all times relevant to this action, was serviced by Flagstar.

---

[1] Before the district court, Plaintiffs also asserted other federal and state-law claims. Plaintiffs asserted those claims against, in addition to Flagstar, Defendants Exodus Financial Corporation, Jane Fowler Kelleher, Stratham Montecito West, Strategic Sales and Marketing Group, Janis Kim Randazzo, Fernando Cordero, and Dora Senaida Cordero. We address all claims under appeal except Plaintiffs' § 2605 claim against Flagstar in a memorandum disposition filed this date.

The loan documents provided for an escrow account into which Plaintiffs would make monthly payments to cover taxes, insurance, interest, and principal. In February 2010, Flagstar notified Plaintiffs that the escrow account would have insufficient funds over the following 12-month period and that they would be required either to increase their monthly payment from $1,917.68 to $2,676.08 or to contribute a one-time lump sum of $4,938.53 to cover the deficiency.

Plaintiffs retained a lawyer who, between March 19, 2010, and August 10, 2010, sent three letters disputing any obligation to make the increased payments. The first letter, which was sent to Flagstar directly, asserted, in relevant part, that the loan documents did not "accurately reflect . . . the proper payment schedule represented by the loan broker." The letter went on to explain that, when Plaintiffs bought the house, the broker assured them that their maximum monthly payments would not exceed $1,900. The letter demanded that Flagstar "revise all documentation concerning the current loan" to reflect the "original terms" of the agreement and limit Plaintiffs' monthly payments accordingly.

The second letter, which also was sent to Flagstar directly, made similar claims. It also told Flagstar that Plaintiffs would continue to make payments of only $1,917.68, as allegedly agreed, and that they expected Flagstar "to apply that amount in full satisfaction of their obligation."

The third letter went to Flagstar's legal counsel. It repeated the assertion that Flagstar's demand for increased payments was invalid, even though it was consistent with the loan and mortgage documents, because Plaintiffs had been

advised when they purchased their home that their payments would not exceed $1,900 per month.

Although Flagstar received Plaintiffs' letters, it made no changes to their account and—although the record is not clear on this point—may have failed to respond at all.[2]

Plaintiffs commenced this action in California state court, alleging that Flagstar violated state law. After Plaintiffs added federal claims under RESPA, Flagstar removed the action to federal court. The district court dismissed the federal claims and remanded the action to the state court. Plaintiffs timely appeal.

RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans. 12 U.S.C. § 2605(e)(1)(A), (e)(2). If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000. *Id.* § 2605(f). Here, Flagstar argues that, regardless

---

[2] During oral argument, the parties disputed whether Flagstar had responded to the letters. But because that issue was neither argued before the district court nor raised in the parties' appellate briefs, we do not address it here. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007) (holding that arguments not raised before the district court generally are waived); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief."). Instead, we assume, for purposes of this appeal, that Flagstar's responses, if any, were inadequate under § 2605.

of how it responded to Plaintiffs' letters,[3] it is not liable under the statute because the letters were not qualified written requests and therefore did not require a response.

To decide whether Plaintiffs' letters triggered § 2605(e)'s duty to respond, we begin by turning to the text of the statute, as well as its object and policy, to discern congressional intent. *United States v. $493,850 in U.S. Currency*, 518 F.3d 1159, 1166–67 (9th Cir. 2008). RESPA defines a "qualified written request" as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

---

[3] If subject to § 2605(e)'s duty to respond, Flagstar would have been required to acknowledge receipt of the correspondence within 20 days and, within 60 days, (1) to make appropriate corrections to the account, (2) to explain why it believed the account to be correct, or (3) to explain why the information requested was unavailable or could not be obtained. 12 U.S.C. § 2605(e)(1)(A), (e)(2).

12 U.S.C. § 2605(e)(1)(B).  Under § 2605(e)(1)(A), a servicer must respond to such a letter if it requests or challenges "information relating to the servicing of such loan."  *Id.* § 2605(e)(1)(A), (e)(2).

Congress intended RESPA to serve consumer-protection purposes.  The statute's first section, which is entitled "Congressional findings and purpose," expresses Congress' determination that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices."  *Id.* § 2601(a); *see also Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008–09 (9th Cir. 2002) (discussing the enactment and congressional purpose of RESPA).  Although the "settlement process" targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, *Greenpoint Mortg. Funding, Inc. v. Herrera (In re Herrera)*, 422 B.R. 698, 711 (B.A.P. 9th Cir. 2010), *aff'd sub nom. Home Funds Direct v. Monroy (In re Monroy)*, 650 F.3d 1300, 1301 (9th Cir. 2011) (order), the scope of the statute's provisions was expanded in 1990 to encompass loan servicing, Pub. L. No. 101-625, tit. IX, subtit. C, § 941, 104 Stat. 4405 (1990). Accordingly, RESPA's provisions relating to loan servicing procedures should be "construed liberally" to serve the statute's remedial purpose.  *Herrera*, 422 B.R. at 711–12.

We have had no occasion to apply those principles to interpretation of § 2605(e), and few other courts have done so.  In *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011), however, the Seventh Circuit recently considered the scope of § 2605(e).  Specifically, in deciding whether a

qualified written request must identify specific reasons for a borrower's belief that his or her account is in error, the court held:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.

*Catalan*, 629 F.3d at 687. We agree and adopt the Seventh Circuit's general approach to defining what qualifies as a qualified written request that will trigger § 2605(e)'s duty to respond. The statute does not explicitly require any "magic" words, and an interpretation according to which it did so

implicitly would be inconsistent with Congress' intent that the statute serve a broad remedial purpose. Instead, under § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's "reasons for the belief . . . that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and (3) seeks "information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A)–(B).[4]

Nonetheless, the third of those requirements—that the letter must request information relating to servicing—ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers. RESPA defines the term "servicing" to encompass only "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments." *Id.* § 2605(i)(3). "Servicing," so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such

---

[4] The district court, like many courts that have addressed the issue, conflated the statutory analysis by declaring that the letters were not qualified written requests because they did not request information relating to servicing. Section 2605(e)(1)(B), which defines what is a qualified written request, does not refer to "information relating to . . . servicing." Instead, that requirement derives from § 2605(e)(1)(A), which requires, as conditions for triggering the duty to respond, both (1) that the letter is a qualified written request and (2) that it requests information relating to servicing. Although this distinction may be meaningless in most cases, we clarify that this opinion concerns the interpretation of § 2605(e)(1)(A).

events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors. Perhaps for that reason, Congress drafted the statute so as not to include those matters.

The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other. That distinction makes sense because only servicers of loans are subject to § 2605(e)'s duty to respond—and they are unlikely to have information regarding those loans' originations. In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).[5]

Turning to Plaintiffs' letters in this case, it is clear that they constitute challenges to the terms of the loan and

---

[5] Our holding is consistent with the decisions of many district courts that have addressed the issue. *See, e.g., Menashe v. Bank of N.Y.*, 850 F. Supp. 2d 1120, 1130 (D. Haw. 2012) (noting that requests regarding the validity of loan and mortgage documents are not qualified written requests); *Jensen v. Quality Loan Serv. Corp*, 702 F. Supp. 2d 1183, 1196 (E.D. Cal. 2010) (dismissing a § 2605(e) claim for failure to allege that inquiries related to servicing); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1199 (N.D. Cal. 2010) (same); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1154 (E.D. Cal. 2010) (holding that a demand for rescission of the loan agreement does not relate to servicing under § 2605(e)); *Consumer Solutions REO, LLC. v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (holding that a qualified written request must address the servicing of the loan, and not its validity); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1043 (E.D. Cal. 2009) (same); *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1097 (E.D. Cal. 2009) (same); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (same).

mortgage documents and are not disputes regarding Flagstar's servicing of the loan. The first letter states that the loan documents did not "accurately reflect . . . the proper payment schedule represented by the loan broker." That assertion amounts to an allegation of fraud or mistake during the closing of the loan and the drafting of the relevant documentation. Thus, it concerns only the loan's validity and terms, not its *servicing*. Likewise, in the second letter, Plaintiffs demanded that Flagstar "revise all documentation concerning the current loan" to reflect the "original terms" of the agreement. A request for modification of a loan agreement, like one for rescission, does not concern the loan's servicing.[6] Finally, the sole request in the third letter is that Plaintiffs' monthly payment be reduced because they were told, when they purchased their home, that those payments would not exceed $1,900. Again, that demand is a challenge to the terms of the loan and mortgage documents, premised on an assertion that the existing documents do not accurately reflect the true agreement between Plaintiffs and the originating lender. Because the letter requests modification of those documents, it is not related to servicing.

In sum, because Plaintiffs' letters to Flagstar challenged the terms of their loan and requested modification of various loan and mortgage documents, they were not qualified written requests relating to the servicing of Plaintiffs' loan. Because 12 U.S.C. § 2605 does not require a servicer to respond to

---

[6] Some borrowers mistakenly may request modification or challenge a loan's validity or terms when they identify a problem in a servicer's accounting. As we have made clear, RESPA does not require magic words, and such letters may trigger a duty to respond under § 2605(e). Here, the letters were drafted by counsel; we therefore assume that they mean what they say.

such requests, the district court correctly dismissed Plaintiffs' claim.

**AFFIRMED**.