**PUBLISHED**
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1858

VIRGINIA M. POINDEXTER,

              Plaintiff - Appellant,

      v.

MERCEDES-BENZ CREDIT CORPORATION, a/k/a Mercedes-Benz Financial,

              Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:13-cv-01200-CMH-TCB)

Argued: May 12, 2015            Decided: July 7, 2015

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Wynn joined.

Joanna Lee Faust, CAMERON MCEVOY, PLLC, Fairfax, Virginia, for Appellant. Frank Joseph Mastro, SCHLOSSBERG & MASTRO, Hagerstown, Maryland, for Appellee.

AGEE, Circuit Judge:

Virginia M. Poindexter appeals the district court's grant of summary judgment to Mercedes-Benz Credit Corporation ("MBCC") on her claims arising from MBCC's failure to timely release a lien placed on her residence after she satisfied her underlying debt obligation. For the reasons set forth below, we affirm the district court's judgment.

I.

In April 2001, Poindexter purchased an Audi sedan from HBL, Inc., an automobile dealer in northern Virginia. She originally entered into a retail installment contract with HBL, but HBL then assigned the contract to MBCC.

Soon after the assignment, MBCC offered Poindexter the opportunity to participate in its Home Owner's Choice program. Under that program, Poindexter would grant MBCC a lien against her Potomac Falls residence by a deed of trust as security for the outstanding automobile loan. MBCC marketed the program as a way for borrowers to make the interest paid on the loan deductible for federal tax purposes. Unless the loan was structured as a mortgage loan, this interest would not be deductible.

Poindexter voluntarily chose to participate in the program. In so doing, she signed a Servicing Disclosure Statement

2

acknowledging that the "mortgage loan" would be covered by the federal Real Estate Settlement Procedures Act ("RESPA"), with MBCC acting as "servicer." (J.A. 96-97.) Consistent with this arrangement, Poindexter executed a Deed of Trust in favor of MBCC, which was properly recorded in the land records of the Loudoun County, Virginia Circuit Court. The Deed of Trust contained a covenant in which MBCC promised to release the lien "[u]pon payment of all sums secured by [it]." (J.A. 10.)

In the spring of 2004, Poindexter traded in her Audi as part of a transaction with HBL to lease a Mercedes-Benz sedan. Her obligation to make further payments related to the Audi ended at that time. For reasons not fully explained in the record, however, MBCC did not record a certificate of satisfaction releasing the Deed of Trust.

Poindexter discovered that the unreleased Deed of Trust remained a lien against her residence in May 2013, when she and her husband attempted to refinance their existing mortgage. Almost immediately, Poindexter's husband and her attorney contacted MBCC on her behalf to demand that MBCC file a certificate of satisfaction to release the lien.[1] Although MBCC remained in discussions with Poindexter and never refused to

[1] By 2013, MBCC had been part of several mergers and its corporate successor was TD Auto Finance LLC. For ease of reference, however, the opinion will refer to these parties collectively as "MBCC."

3

record a certificate of satisfaction, it also did not timely fulfill Poindexter's demand. The lender Poindexter had approached to refinance her home denied her application.

Soon thereafter, in September 2013, Poindexter filed a complaint against MBCC in the United States District Court for the Eastern District of Virginia. The Complaint alleged six causes of action: (1) breach of contract; (2) slander of title; (3) violation of RESPA; (4) violation of the Virginia Consumer Protection Act ("VCPA"); (5) violation of Virginia Code § 55-66.3; and (6) declaratory judgment. She sought to have a certificate of satisfaction recorded and claimed $95,000 in damages, as she alleged that MBCC's actions had, among other things, prevented her from securing a better interest rate during her mortgage refinancing.

Several weeks later, MBCC recorded a certificate of satisfaction that released the lien of the Deed of Trust against Poindexter's residence. MBCC then moved for summary judgment on all of the claims, arguing they were time-barred. Furthermore, MBCC contended that Poindexter had, at least as to some of her claims, failed to demonstrate facts that would support all of their elements.

As discussed in greater detail in context below, the district court granted summary judgment to MBCC as to all claims, often providing multiple grounds for doing so.

4

Poindexter noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City of Balt., 721 F.3d 264, 283 (4th Cir. 2013) (en banc). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition to construing the evidence in the light most favorable to Poindexter, the non-movant, we also draw all justifiable inferences in her favor. Greater Balt. Ctr. for Pregnancy Concerns, Inc., 721 F.3d at 283.

## III.

We now address each of the claims raised by Poindexter in turn.[2]

---

[2] "[W]here a federal court addresses state law claims under its pendent jurisdiction," the court must "apply state law . . . to those issues." In re Merritt Dredging Co., 839 F.2d 203, 205 (4th Cir. 1988). Thus, we look to Virginia law to decide Poindexter's Virginia-law-based claims.

A.    Breach of Contract

In analyzing Poindexter's central cause of action for breach of contract, the district court noted that her claim accrued under Va. Code § 8.01-230 in 2004, when the debt was satisfied, but MBCC failed to record the certificate of satisfaction.   The district court thus concluded that Poindexter's claim, which was not filed until 2013, was untimely under any of the possible statutes of limitation, a point Poindexter concedes on appeal.[3]

Still, Poindexter contends, as she did below, that MBCC should be equitably estopped from pleading that the statute of limitations bars her claim.   She argues that she should not be "held at fault for not realizing that MBCC had failed to release the lien" because MBCC had the duty to fulfill its contractual obligations under the Deed of Trust.   (Opening Br. 19.)   This amounts to no more than arguing that she is entitled to equitable estoppel because MBCC breached its contractual obligations.   But Poindexter further posits that she was

_____

[3] The district court did not specifically identify which Virginia limitations period would apply.   MBCC contends the general two-year limitations period in Va. Code § 8.01-248 governs because the parties' contract does not satisfy the various requirements for any of the lengthier periods set forth for personal actions based on contracts in § 8.01-246.   This issue does not ultimately matter, however, given Poindexter's concession that her claim does not satisfy any possibly applicable limitations period.

6

entitled to assume that MBCC had timely recorded a certificate of satisfaction, particularly in light of her 2004 and 2008 dealings with MBCC, which led her to believe that it had done so.

Although the district court did not directly address Poindexter's argument, she cannot successfully invoke equitable estoppel in this case. Under Virginia law, a party seeking to invoke equitable estoppel must prove "by clear, precise, and unequivocal evidence" that:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation as made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 266 S.E.2d 887, 890 (Va. 1980). Moreover, "'[i]t is essential to the application of the principles of equitable estoppel, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information.'" Id. (quoting Lindsay v. James, 51 S.E.2d 326, 332 (Va. 1949)) (internal omission omitted).

7

The record does not contain evidence that Poindexter lacked a "convenient and available means of acquiring" the actual information about the status of the MBCC lien against her house. Although Poindexter claims that she should not have been required to go to the Loudoun County courthouse to check whether MBCC had filed a certificate of satisfaction, she also admits that nothing prevented her from doing so.[4] Indeed, she was not required to go to the courthouse to obtain a copy of the record at all.[5] Moreover, the record lacks any "clear, precise, and unequivocal evidence" to create a genuine issue of material fact as to whether MBCC made any false representation or tried to conceal anything.

Poindexter first points to her 2004 "dealings with MBCC" as a basis for her belief that a certificate of satisfaction was filed. But all she cites is the fact that she traded in her Audi for a new vehicle that year. Nothing in the record indicates an additional or new statement in 2004 by MBCC that had anything to do with the existing Deed of Trust or the filing of a certificate of satisfaction.

---

[4] The Loudoun County real estate records are public records, open to inspection in person in the clerk's office. See Va. Code §§ 2.2-3704, 17.1-276(C).

[5] Copies of Virginia land records can be obtained via mail upon written request (for a nominal fee). In addition, records can be accessed remotely via the internet (with a paid subscription), see §§ 17.1-276, 17.1-294.

Similarly, Poindexter's reliance on a March 18, 2008 MBCC letter does not constitute a false representation or concealment of a material fact. To be sure, the letter "acknowledges [her] account has been paid in full and [that Mercedes-Benz had] released [its] security interest in [her] vehicle." (J.A. 130.) But the 2008 letter lists a different account number, vehicle identification number, and vehicle description that were not the relevant numbers and description for the Audi. Thus, the letter contained an accurate statement concerning the release of a security interest in that other vehicle, and did not purport to relay any information regarding the security interest for the Audi. See Boykins Narrow Fabrics Corp., 266 S.E.2d at 890 (rejecting plaintiff's equitable estoppel argument where "[t]he record provide[d] no substantial support for [the plaintiff's] claim that [the defendant] lulled it into a false sense of security through fraudulent acts" (emphasis added)).

Having failed to demonstrate a false representation or concealment of any material fact related to the Deed of Trust or certificate of satisfaction, Poindexter cannot successfully invoke the principles of equitable estoppel. Accordingly, her breach of contract action is subject to the ordinarily applicable limitations period.

Nonetheless, Poindexter also contends the district court granted summary judgment prematurely because she had moved for

9

discovery under Federal Rule of Civil Procedure 56(d) to obtain all documents pertaining to her account that MBCC had in its possession. The district court did not rule on this motion before granting summary judgment. That said, Rule 56(d) only "mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014) (quoting Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006)). Poindexter has not explained – nor did she show to the district court – how the information in her MBCC account could possibly "create a genuine issue of material fact sufficient for [her] to survive summary judgment," or otherwise affect the court's analysis. Fed. R. Civ. P. 56(d). For this reason, we find no error in the district court's implicit denial of her motion.

Accordingly, we hold that the district court appropriately granted MBCC summary judgment on Poindexter's breach of contract claim.


B.   Slander of Title

Poindexter next alleged MBCC committed slander of title under Virginia law. The district court disagreed for two reasons, first concluding that the record did not demonstrate "that MBCC published false words with malice that disparaging

10

[Poindexter's] title to her property," and then observing that the action was untimely since it had not been brought within the applicable five-year limitations period.  (J.A. 168.)

Poindexter argues the district court erred on both grounds. She claims that MBCC's failure to file a timely certificate of satisfaction could demonstrate the requisite gross indifference, recklessness, and wanton or willful disregard of her rights to constitute slander of title.  In addition, she maintains that the limitations period did not begin until the tortious conduct stopped, i.e., when MBCC recorded a certificate of satisfaction.

The district court properly granted summary judgment as to this claim because, at a minimum, the record contains no evidence that MBCC acted with malice.  "To prove slander of title, [Poindexter] must show that [MBCC] acted with malice or in reckless disregard of the truth or falsity of the statement[.]"  Wright v. Castles, 349 S.E.2d 125, 129 (Va. 1986).  The Supreme Court of Virginia has defined malice to be "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff[; or a] communication . . . made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff."  Great Coastal Express, Inc. v. Ellington, 334 S.E.2d 846, 851 n.3 (Va. 1984), overruled on other grounds by Cashion v. Smith, 749 S.E.2d 526, 532 (Va.

11

2013).  "Reckless disregard," too, consists of something substantially higher than ordinary negligence, akin to "willful" and "wanton" behavior, "in disregard to another person's rights or . . . to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another."  Giffin v. Shively, 315 S.E.2d 210, 212-13 (Va. 1984); see also Richmond Newspapers, Inc. v. Lipscomb, 362 S.E.2d 32, 37-38 (Va. 1987).

Contrary to Poindexter's contention, the record lacks any evidence that would suggest MBCC acted with malice or reckless disregard.  To satisfy her burden, Poindexter points to nothing in the record other than the "facts" that MBCC failed to file a certificate of satisfaction in 2004 and failed to immediately file one after she contacted it in 2013.  But MBCC explained that "it appear[ed] to have been simply an administrative oversight" and that it did "not know why [MBCC] did not release the Deed of Trust in 2004."  (J.A. 157.)  At most, that evidence suggests negligence, and Poindexter offers no evidence to support another motive or reason for MBCC's conduct.  Although MBCC failed to fulfill its obligation, the evidence does not indicate any of the qualities necessary to create a question of fact as to malice or reckless disregard under Virginia law. Similarly, although MBCC could have (and should have) responded more promptly in 2013, the record similarly does not indicate

12

malice or reckless disregard so much as corporate incompetence, confusion, and other responses that fell short of immediately filing a certificate of satisfaction.  Once again, this conduct does not rise to the level necessary for a reasonable jury to conclude that MBCC acted with malice or reckless disregard under Virginia law.  As such, the district court appropriately granted MBCC summary judgment, and we need not address the parties' alternative arguments raised with respect to this claim.

## C.    RESPA

Under RESPA, "any servicer of a federally related mortgage loan [who] receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, [has a duty to] provide a written response acknowledging receipt of the correspondence . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).  A "qualified written request" is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the service, that" "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the

13

borrower." Id. § 2605(e)(1)(B). In relevant part, the then-applicable version of the statute also provided that a servicer had to "make appropriate corrections" or "provide the borrower with a written explanation or clarification" within a set time frame of receiving a qualified written request. Id. § 2605(e)(2).[6]

In relevant part, then, to state a claim under § 2605(e)(1)(B), Poindexter had to send MBCC a "qualified written request . . . for information relating to the servicing of such loan[.]" The district court concluded Poindexter never made such a request and thus did not trigger any obligations by MBCC under RESPA. Poindexter contends the court erred because she – through her husband and her attorney – made multiple requests that satisfy the statutory requirements.

Several of the "requests" Poindexter relies upon do not satisfy the definition of a "qualified written request." To state the obvious, oral communications are not "written." Nor

---

[6] The district court relied on an earlier version of the statute that set the required time frame at sixty days. Poindexter contends that this was incorrect because the statute now requires a response within thirty days. For the reasons set out by the Tenth Circuit in Berneike v. CitiMortgage, Inc., 708 F.3d 1141 (10th Cir. 2013), the sixty-day limit appears to govern this dispute. Id. at 1145 n.3 (explaining when the statutory changes, which were part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, became effective). However, these statutory changes have no impact on the district court's analysis or ours given that our focus is on Poindexter's failure to trigger a duty under RESPA in the first instance.

14

would a combination of oral communications alongside a faxed copy of the Deed of Trust constitute a "qualified written request," since that statutory term requires "<u>written correspondence</u>" that "includes a <u>statement of the reasons</u> for the belief of the borrower . . . that the account is in error or provides <u>sufficient detail</u> to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B) (emphasis added).  The July 2013 letter from Poindexter's attorney to MBCC references a different account number, VIN, and vehicle other than the Audi for which the Deed of Trust was recorded.  Thus, that letter also does not satisfy § 2605(e)(1)(B)'s requirements: a "qualified written request" must identify the "account of the borrower" that is disputed.

Regardless, all of the "requests" Poindexter cites suffer from a more fundamental omission.  RESPA triggers a duty only upon receipt of a "qualified written request" that "relat[es] to the servicing of [a RESPA-governed] loan."  Id. § 2605(e)(1)(A).  Section 2605(i)(3) defines "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments."

Although we have not previously opined on the parameters of this component of § 2605(e), we find the Ninth Circuit's

15

decision in Medrano v. Flagstar Bank, FSB, 704 F.3d 661 (9th Cir. 2012), instructive. In that case, the court observed that the "relating to" component of § 2605(e) "ensures that the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers." Id. at 666. Instead, § 2605(i)(3)'s definition of "servicing" "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement," which "precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." Id. at 666-67. For these reasons, the Ninth Circuit held that § 2605 "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other." Id. at 667. Applying these general principles to the letters at issue in the case, the Medrano court concluded that a letter challenging "the terms of the loan and mortgage documents, premised on an assertion that the existing documents [did] not accurately reflect the true agreement" and "request[ing] modification of those documents" did not "relate[] to servicing" and thus did not trigger the servicer's RESPA obligations under § 2605(e). Id. at 667.

16

A request concerning a failure to file a certificate of satisfaction upon satisfaction of the loan would not fall within this statutory framework either. Here, MBCC acted as both the originator and servicer of the loan at issue. Accordingly, MBCC would be subject to § 2605's rules governing servicers. 12 U.S.C. § 2605(i)(2) (defining "servicer" to mean "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)"). However, Poindexter's request to MBCC does not relate to its "servicing" of the loan, i.e., the receiving or making of loan payments. See id. § 2605(i)(3). Instead, as was the case in Medrano, Poindexter's request relates back to "the terms of the loan and mortgage documents," specifically, an obligation that arose after the loan was satisfied.

Filing the certificate of satisfaction is one of the most elementary responsibilities of the originator (or his assignee) of the loan, not the loan servicer. See Va. Code § 55-66.3 (repeatedly referring to the lien creditor's responsibilities vis-à-vis the certificate of satisfaction). What is more, the servicer traditionally has no ability to file the certificate of satisfaction as a part of servicing the loan. Instead, its role is generally limited to collecting payments, directing them to the principal and interest, providing basic information on payoff amounts and periodic payments to the borrower,

17

facilitating loss mitigation, and informing the originator when the obligation has been satisfied. See generally 12 U.S.C. § 2605. Poindexter's inquiry to MBCC – relating to the filing of a certificate of satisfaction – referenced an obligation MBCC had under the Deed of Trust as the lien creditor. It did not reference any aspect of MBCC's "servicing" the loan.

In sum, because Poindexter's communications did not constitute a "qualified written request[] . . . relating to the servicing of" her obligation with MBCC, they did not trigger any obligations under § 2605(e). Accordingly, the district court properly granted MBCC summary judgment on Poindexter's RESPA claim as well.

### D. VCPA

Under the VCPA, a supplier in a consumer transaction cannot use any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200(14). But the VCPA does not apply to "mortgage lenders," which are defined as "any person who directly or indirectly originates or makes mortgage loans." Va. Code § 59.1-199(D); id. § 6.2-1600.

The district court granted MBCC summary judgment on this claim because "MBCC functioned as a mortgage lender, thus, no VCPA can lie against [it] as a matter of law." (J.A. 169.)

18

Alternatively, it observed that the applicable limitations period (Va. Code § 59.1-204(A)) barred Poindexter's claim.

Poindexter disputes both rulings, contending that MBCC is not a "mortgage lender" under the relevant code sections because it did not "originate[] or make[]" the loan to purchase the Audi. Rather, the initial car loan was between Poindexter and HDL; Poindexter began making payments on the loan; HDL assigned the loan to MBCC; and while MBCC obtained additional security for the loan in the form of the Deed of Trust, that process did not "magically transf[orm] the original loan from a vehicle loan to a mortgage loan." (Opening Br. 10.) Poindexter also asserts that a reasonable jury could conclude that she timely filed her action since she exercised due diligence upon learning of MBCC's misrepresentation that the lien would be released upon satisfying her obligation.

We disagree. Poindexter misreads the VCPA's exemption to require MBCC to be the originator of the underlying obligation. To the contrary, the statutory definition of a "mortgage lender" includes "any person who directly or indirectly originates or makes a mortgage loan." See Va. Code § 6.2-1600. Although the vehicle loan originated with HBL and then was transferred to MBCC, MBCC and Poindexter entered into a "modification" of the vehicle-loan agreement, which converted the vehicle loan into a "mortgage loan" with the lien on Poindexter's real estate.

19

(J.A. 96, 142.) MBCC thus "directly or indirectly . . . originat[ed] or ma[d]e" a "mortgage loan" for purposes of the VCPA exemption.

Poindexter also failed to proffer evidence that her arrangement with MBCC did not satisfy the VCPA definition of a "mortgage loan." Certainly, the terms used by the parties demonstrate their intent that the arrangement be considered a mortgage loan. That was the entire purpose of Poindexter's voluntary application to participate in MBCC's Home Owner's Choice program. Based on the record before us, it appears that the loan was "made to an individual [Poindexter], the proceeds of which [were] to be used primarily for personal . . . purposes [purchasing the Audi], which loan [was] secured by a . . . deed of trust." § 6.2-1600. For years, Poindexter benefited through tax deductions from having the loan classified as a "mortgage loan" as a result of her specific agreement with MBCC (not HBL), and she cannot now evade its consequences.

The district court thus did not err in holding that her claim failed as a matter of law or in granting MBCC summary judgment. In light of this conclusion, we need not address whether Poindexter's claim is also barred by the statute of limtiations.

### E.    Va. Code § 55-66.3

Lastly, Poindexter argues that MBCC violated Virginia Code § 55-66.3, which requires secured real estate creditors to file certificates of satisfaction upon payment or satisfaction of the underlying obligation. She sought statutory relief for this violation under § 55-66.3(A)(1), which states that if the certificate of satisfaction has not been filed "within 90 days after payment, . . . the lien creditor shall forfeit $ 500 to the lien obligor. . . . Following the 90-day period, if the amount forfeited is not paid within 10 business days after written demand for payment is sent to the lien creditor . . . , the lien creditor shall pay any court costs and reasonable attorney's fees incurred by the obligor in collecting the forfeiture."

The district court concluded that because Poindexter filed her complaint more than two years after the claim accrued, this claim was time-barred. See Va. Code § 8.01-248 (setting a two-year limitations period for "[e]very personal action . . . for which no limitation is otherwise prescribed").

Poindexter contends the district court misread the statute because a claim cannot arise until after a demand for satisfaction has been made and the 90- and 10-day periods have passed. Under Poindexter's reading of the statute, her claim

21

was timely because it was filed within two years of when she demanded that MBCC record a certificate of satisfaction.

We disagree with Poindexter's interpretation of § 55-66.3(A)(1). The statute plainly provides that the $500 forfeiture right arises by operation of law when a creditor fails to file a certificate of satisfaction "within 90 days after payment." Poindexter's cause of action to collect the forfeiture thus arose on the ninety-first day after payment. Because Poindexter satisfied her obligation on the Audi in 2004, a claim filed in 2013 falls well outside the two-year limitations period.

The statutory language about a written demand for payment of the forfeiture does not alter this analysis. That language does not refer to demanding that a lender file a certificate of satisfaction, but refers to a demand to pay the $500 forfeiture. Moreover, it does not affect when an obligor can collect the $500 forfeiture for failure to timely file a certificate of satisfaction, but instead refers to when an additional sum can also be collected for failure to pay the forfeiture. Consequently, the district court properly held that Poindexter's claim was untimely.[7]

_____

[7] As the statute of limitations bars Poindexter's statutory forfeiture claim, there is no basis upon which Poindexter can
(Continued)

IV.

For these reasons, we affirm the district court's judgment in favor of MBCC.[8]  Nonetheless, we note the substandard nature of MBCC's conduct in releasing the lien on Poindexter's home. While the various statutory barriers cited negate Poindexter's claims, had she acted diligently she may have had viable claims at least as to breach of contract and Va. Code § 55-66.3(B). MBCC would be well served to review its business practices to forestall such claims in future cases.

AFFIRMED

---

claim attorney's fees or costs, as she has no forfeiture right to enforce.

[8] Poindexter's opening brief only refers in passing to the district court's denial of her declaratory judgment claim.  The district court concluded it was moot given that it related solely to MBCC needing to file the certificate of satisfaction, an act MBCC fulfilled before the court considered the case.  In light of Poindexter's failure to brief any specific error respecting this claim, we consider any challenge waived.  See Fed. R. App. P. 28(a); Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 607 (4th Cir. 2009) (concluding an appellant's "fail[ure] to raise any argument to support [a broad] claim . . . failed to comply with the specific dictates of Rule 28(a)(9)(A)" and thus were waived).