**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1745

ROGERS MORGAN; PATRICE L. JOHNSON, On behalf of themselves individually and on behalf of a Class and Subclass of similarly situated persons,

Plaintiffs - Appellants,

v.

CALIBER HOME LOANS, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge.  (8:19-cv-02797-PX)

Argued:  September 22, 2021                    Decided:  February 22, 2022

Before KING, THACKER, and RICHARDSON, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Thacker wrote the majority opinion, in which Judge King joined.  Judge Richardson wrote a separate opinion, concurring in part and dissenting in part.

**ARGUED:**  Phillip R. Robinson, CONSUMER LAW CENTER LLC, Silver Spring, Maryland, for Appellants.   Matthew Allen Fitzgerald, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Melissa O. Martinez, Baltimore, Maryland, Brian E. Pumphrey, Michael W. Stark, MCGUIREWOODS LLP, Richmond, Virginia, for Appellee.

THACKER, Circuit Judge:

In this case, we address whether letters sent by borrowers Rogers Morgan ("Morgan") and Patrice Johnson ("Johnson") (collectively, "Appellants") to their loan servicer, Caliber Home Loans ("Appellee"), constitute qualified written requests ("QWRs") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, or the related Consumer Financial Protection Bureau ("CFPB") Regulation X, 12 C.F.R. pt. 1024, such that they triggered an obligation for Appellee to cease providing adverse information about Appellants' accounts to credit reporting agencies.

We conclude that where a written correspondence to a loan servicer provides sufficient information to identify the account and an alleged servicing error, such correspondence is a QWR for the purpose of RESPA and Regulation X. Conversely, where such written correspondence merely challenges a contractual issue, it does not implicate a servicing issue and therefore is not a QWR pursuant to RESPA or Regulation X.

Because Morgan's correspondence to Appellee provided sufficient detail to identify his account and the reasons he believed account was in error, we conclude the correspondence meets the threshold for a QWR pursuant to RESPA and Regulation X. Accordingly, we reverse the district court's grant of Appellee's motion to dismiss Morgan's claim. However, because Johnson's correspondence did not allege a dispute related to the servicing of her account, it is not a QWR protected by RESPA or Regulation X. Thus, we affirm the district court's grant of Appellee's motion to dismiss Johnson's claim.

2

I.

A.

<u>Morgan Letter</u>

In 1994, Morgan acquired a mortgage in order to purchase a home. Four years later, Morgan refinanced this property with a loan from NationsBank, NA. In 2015, Appellee purchased that loan and became Morgan's new loan servicer.

Morgan was employed by the District of Columbia. Per the terms of Morgan's employment agreement, the District of Columbia periodically reviewed his credit reports. Between 2015 and 2016, the District of Columbia expressed concerns about Morgan's credit reports, which reflected purported overdue home loan payments.

But, Morgan did not believe he was behind on his mortgage. Therefore, on September 25, 2016, Morgan corresponded with Appellee ("Morgan Letter"):

> Please find a report from D.C. Gov[ernment] stating as of 10/13/15 I owe Caliber $16,806[.] [A]lso on 9/20/16 I called Caliber and talked to Thomas ID#27662[.] [H]e stated I owe $30,656.89 and the $630.00 on my record is late charges. Can you please correct your records[?] Your office reporting the wrong amount to the credit agency is effecting [sic] my employment. Please correct your records.

J.A. 82.[*] Enclosed with this letter, Morgan included a copy of a credit report, which had been provided to his employer. This report indicated that Morgan's account was 120 days past due and had a past due balance of $16,806.

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

Morgan alleges Appellee continued to report adverse loan information to credit agencies even after receiving the Morgan Letter, which called this information into question.

B.

Johnson Letter

On August 2, 2016, Johnson obtained a residential mortgage directly from Appellee. When Johnson fell behind on her mortgage payments, Appellee began reporting this adverse information to credit reporting agencies. In September 2018, Johnson applied for a loan modification for lower payments. In response, Appellee initially placed Johnson on a trial payment plan, a preliminary step toward approval of a loan modification. The purpose of the trial payment plan was to provide Johnson the opportunity to demonstrate she could make three timely, reduced payments. Although Johnson made the payments required by the trial payment plan, in November 2018, Appellee nonetheless declined to finalize the loan modification, citing the existence of a priority lien by a solar panel company.

On February 11, 2019, Johnson sent Appellee a letter ("Johnson Letter"), challenging the existence of "title issues" due to the solar panel company lien and asking Appellee to "conduct a reasonable investigation into these matters and correct your errors." J.A. 87. The Johnson Letter further requested "an accounting of all sums you have imposed upon and collected related to my loan including convenience fees for accepting payment over the phone and property inspection fees." *Id.* at 87–88. In response, Appellee revisited the possibility of a loan modification, and the parties ultimately finalized a loan

4

modification agreement on April 26, 2019. Yet, in the interim, Appellee declined to stop reporting adverse information about Johnson's purported delinquent payments on her home loan to credit reporting agencies.

C.

Procedural History

In September 2019, Appellants filed claims against Appellee, both individually and on behalf of a putative class of "all residential loan borrowers" who submitted QWRs per RESPA and Regulation X to Appellee in the preceding three years. As detailed below, when a loan servicer receives a QWR, the servicer is required by RESPA and Regulation X to temporarily stop reporting adverse information about the borrower's loan payments to credit reporting agencies. Appellants contend that despite the fact that they sent QWRs to Appellee, Appellee continued to report adverse information on Appellants' loans to credit reporting agencies in contravention of RESPA.

Before the district court, Appellee filed a motion to dismiss Appellants' claims. Appellee argued the Morgan Letter is not a QWR because it does not dispute a specific payment, which Appellee contends is required by RESPA. Appellee also argued that the Johnson Letter is not a QWR because it only disputes a potential loan modification, which is not protected by RESPA. On June 10, 2020, the district court granted Appellee's motion to dismiss. Given that the district court dismissed Appellants' individual claims, it also dismissed Appellants' related class action claims. Appellants timely appealed.

5

II.

We review a district court's grant of a motion to dismiss de novo. *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021). "In doing so, we accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016).

III.

A.

RESPA and Regulation X

In relevant part, RESPA provides that loan servicers have a duty to respond to any QWR received from borrowers "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e). Further, when a loan servicer receives a QWR, that servicer has a duty to refrain from "provid[ing] information regarding any overdue payment, owed by such borrower and relating to such period [of sixty days from the servicer's receipt of a QWR] or [QWR], to any consumer reporting agency." *Id.*

The CFPB has enforcement authority for RESPA. The CFPB has issued Regulation X to interpret and implement RESPA. Regulation X provides guidance with regard to QWRs that assert an error, as well as guidance with regard to what constitutes "servicing."

6

B.

Qualified Written Requests

Per RESPA,

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  In turn, Regulation X provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 CFR § 1024.35(a).  As to what constitutes an error, Regulation X details 11 specific categories of errors (e.g., failure to accept payment, imposition of fees without a reasonable basis, failure to provide an accurate payoff balance amount upon borrower's request), as well as a catchall category of "any other error relating to the servicing of a borrower's mortgage loan." *Id.*

7

In *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406 (4th Cir. 2015), we addressed what constitutes a QWR pursuant to RESPA. To qualify as a QWR, a document must be a "written correspondence" that contains either (1) a "statement of the reasons" for the borrower's belief the account is in error or (2) "sufficient detail" regarding the information requested by the borrower. *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015) (emphasis deleted) (quoting 12 U.S.C. § 2605(e)(1)). Further, a QWR "must identify the 'account of the borrower' that is disputed." *Id.* However, RESPA does not require the borrower to explicitly state details such as the account number; rather, it allows for the QWR to include information that "otherwise enables the servicer to identify" the account. 12 U.S.C. § 2605(e)(1)(B)(i).

C.

Servicing

Pursuant to RESPA:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in [12 U.S.C. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). RESPA provides that a servicer shall not "fail to take timely action to respond to a borrower's requests to correct errors" related to servicing, such as "errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." *Id.* § 2605(k)(1)(C).

Regulation X further defines "servicing" as:

8

receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under [12 U.S.C. § 2609], and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract. In the case of a home equity conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower.

12 C.F.R. § 1024.2.

## D.

## Appellants' Letters

The district court concluded (1) the Morgan Letter is not specific enough to constitute a QWR; and (2) the Johnson Letter is not a QWR because it "challenges only [Appellee's] stated denial for the loan modification," which "does not implicate servicing of the loan." J.A. 165.

## 1.

## Is the Morgan Letter a QWR?

Here, the district court concluded the Morgan Letter is not a QWR. This was error. First, the district court erred by concluding the Morgan Letter is not a QWR and does not "trigger[] RESPA's prohibition on credit reporting" because it does not "dispute specific payments." J.A. 142. RESPA does not limit the reporting of overdue payments to disputes of *specifically identified payments* but includes any "qualified written request relating to a dispute regarding the borrower's payments." 12 U.S.C. § 2605(e)(3). We conclude that the Morgan Letter is a QWR subject to RESPA, as it is "a written correspondence" that

9

articulates a "statement of reasons" in "sufficient detail" to indicate to Appellee why Morgan believed the credit reporting was in error. *Id.* § 2605(e)(1)(B); *see also Poindexter*, 792 F.3d at 413.

Specifically, the Morgan Letter includes the name, account number, and other information that would "enable[] the servicer to identify" the account, and it includes "reasons for the belief of the borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B). Morgan described the conflicting balance information he had received from his employer's reports, showing that he "owe[d] [Appellee] $16,806," and Appellee's representative, who allegedly identified the balance as "$30,656.89" in addition to "$630.00 on [his] record" for "late charges." J.A. 82.

Further, the district court erred by concluding the Morgan Letter is not a QWR due to a "lack of specificity." J.A. 164. The Morgan Letter is not a general or vague complaint. To the contrary, as noted, the Morgan Letter includes an account number, as well as a reference to an agent and that agent's ID number related to a specific phone call Morgan had with a representative of Appellee to discuss the conflicting balance information. Although oral communications are not, by themselves, sufficient to create a QWR, *see Poindexter*, 792 F.3d at 413, the reference to an oral communication here provided specific information that could have "otherwise enable[d] the servicer to identify" the account at issue. 12 U.S.C. § 2605(e)(1)(B). More importantly, the Morgan Letter does not rely solely on this alleged phone call with Appellee's representative as the basis for the description of the problem. The Morgan Letter also details conflicting balance information received from Appellee and the credit reporting service. Although the Morgan Letter does

10

not state which amount, if either, is the correct amount, this type of discrepancy is sufficient to indicate a dispute exists as to the servicing of loan.  Morgan's request for Appellee to "correct [their] records" clearly stems from the confusion presented about his account balance and his belief that Appellee's "office is reporting the wrong amount to the credit agency." J.A. 82.

Therefore, the facts taken in the light most favorable to Morgan are sufficient at this stage to survive a motion to dismiss.  Accordingly, we reverse the district court's dismissal of Morgan's claim and those of the related putative class and remand for further proceedings.

2.

Is the Johnson Letter a QWR?

According to Appellee, the Johnson Letter is not a QWR because it is merely contesting Appellee's denial of Johnson's loan modification.  The district court agreed with Appellee and dismissed the complaint relative to Johnson's claim.  The key question in this case with respect to the Johnson Letter is whether "servicing" for the purpose of RESPA includes disputes about potential loan modifications.

Although we have not directly addressed the issue of whether a modification, or potential modification, of a contract constitutes servicing protected by RESPA, we have previously found the Ninth Circuit's treatment of the issue in *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), to be instructive.  *Poindexter*, 792 F.3d at 413.  In *Medrano*, the Ninth Circuit concluded RESPA "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the

11

borrower's contractual relationship with the lender, on the other." 704 F.3d at 667. Consequently, the Ninth Circuit held that "challenges to the terms of the loan and mortgage documents" are not disputes regarding servicing under RESPA. *Id.* Similarly, in *Poindexter v. Mercedes-Benz Credit Corp.*, we emphasized that "servicing" is limited to "the receiving or making of loan payments" and is not related to "the terms of the loan and mortgage documents." 792 F.3d at 413 (citing 12 U.S.C. § 2605(i)(3)). Thus, correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs.

A loan modification is a contractual issue, not a servicing matter. The Johnson Letter does not relate to any dispute of Johnson's payments, or assert an error related to the servicing of the loan. *See* 12 U.S.C. § 2605(k)(1)(C) (stating that a servicer must "respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties"). Rather, the Johnson Letter merely challenges the denial of a modification of the terms of Johnson's loan. The only error alleged in the Johnson Letter is denial of the loan modification based on title issues regarding the solar panel company lien. This does not fall within the ambit of "servicing" so as to trigger RESPA's protections against providing adverse information to credit reporting agencies.

Johnson points to *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022), as support for her argument that RESPA is applicable to her situation. In *Naimoli*, a loan servicer denied a loan modification after the servicer lost a borrower's loan documents. 22 F.4th at 383. The Second Circuit concluded that the mismanagement of

12

documents is an error "related to" servicing of the borrower's loan and is consequently covered by the protections of RESPA. *Id.* But, importantly, the Second Circuit's holding is still limited to *servicing* errors. The Second Circuit held the identification of "errors while in pursuit of a loss mitigation option does not impair their connection to the servicing of [the borrower's] loan," as it was the "loss of the loan documents [that] made [the borrower] ineligible for the loan modification" and in turn "jeopardized [the servicer's] ability to make payments to the loan's owners in the event of a foreclosure." *Id.* Moreover, "the errors [the borrower] identified were correctable without overturning [the servicer's] determination regarding her loss mitigation application, because [the servicer] could simply have located and recorded the documents without changing its decision regarding loss mitigation." *Id.* Therefore, *Naimoli* is unavailing here.

Even taken in the light most favorable to Johnson, the Johnson Letter cannot constitute a QWR. As a result, we affirm the district court's dismissal of Johnson's claim.

IV.

For the reasons set forth above, we hold the district court erred in granting Appellee's motion to dismiss Morgan's claim. Accordingly, we reverse and remand for further proceedings consistent with this opinion. However, we affirm the district court's grant of Appellee's motion to dismiss Johnson's claim.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

13

RICHARDSON, concurring in part and dissenting in part:

I largely agree with my colleagues. But I disagree that the Morgan letter constitutes a "qualified written request" triggering protection under the Real Estate Settlement Procedures Act. The Act requires, among other things satisfied here, a "statement of the reasons for the belief of the borrower . . . that the account is in error." 12 U.S.C. § 2605(e)(1)(B)(ii). The Morgan letter fails to identify the believed error and provides no "statement of the reasons" for believing that unidentified error exists.

Let's start with the servicing error itself. The letter does not identify what the alleged error might be. *See* 12 C.F.R. § 1024.35(a). As the majority points out, the letter does identify two balances about a year apart. First, the D.C. Government identified the balance in October 2015 as $16,806. And then Caliber identified a September 2016 balance of $30,656.89 plus $630 in late charges.

After identifying two balances, Morgan claims that Caliber was "reporting the wrong amount to the credit agency." J.A. 82. But only the lower balance ($16,806) came from a credit report. So the letter seems to suggest that lower balance must be the "wrong amount," meaning the higher ($30,656) balance must be correct. But that cannot be. It would hardly make sense for Morgan to complain that Caliber erred in providing the credit agency with too low of a balance. One might alternatively stretch to read Morgan's letter to allege that Caliber's $30,656 balance was the "wrong amount" but then it is hard to understand from the letter what is wrong with the $16,806 balance that came from a credit report. Either way, neither reading reflects the error Morgan believed existed. Morgan explains—in the complaint, not the letter—that the loan had been fully paid off so he

14

apparently believed that *both* balances referenced in the letter were wrong.  But there is no way to glean that error from the letter.

Even if I strained to read Morgan's letter as claiming both listed amounts were wrong, the letter does even less to provide a "statement of reasons" for that belief. § 2605(e)(1)(B)(ii).  While precision is not required, there are *no* reasons provided.  And an asserted error without reasons is not a qualified written request.

Nor can a borrower meet his duty to provide "reasons" by providing bits and pieces of information that the servicer might puzzle together to identify the borrower's belief and reasons.  That lower bar only applies to the name and account of the borrower.  A letter can either *include* the "name and account" or "otherwise enable[] the servicer to identify" the name and account.  § 2605(e)(1)(B)(i).  But subsection (ii) omits any language permitting the borrower to only provide clues that "otherwise enable the servicer to identify" the error or reasons for it.  Instead, it requires that the "statement of reasons" for the belief of error must be *included*.  § 2605(e)(1)(B)(ii).[*]

A "qualified written request" must include a "statement of the reasons for the belief of the borrower . . . that the account is in error." § 2605(e)(1)(B)(ii).  Morgan's letter fails to identify what he believed the error to be and provides no statement of reasons for his belief.  So I respectfully dissent in part.

---

[*] Nor does the second clause of subsection (ii) benefit Morgan.  Subsection (ii) may be satisfied by (A) including a statement of reasons for the belief of error, or (B) providing "sufficient detail" regarding "other information sought." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015) (quoting § 2605(e)(1)(B)(ii)).  Morgan's letter does not seek any information, so the "sufficient detail" clause does not apply.