In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-2206

STEPHEN H. PERRON and
the UNITED STATES BANKRUPTCY TRUSTEE
FOR THE SOUTHERN DISTRICT OF INDIANA
on behalf of CHRISTINE M. JACKSON,

*Plaintiffs-Appellants*,

*v.*

J.P. MORGAN CHASE BANK, N.A.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-01853 — **Tanya Walton Pratt**, *Judge*.

ARGUED JANUARY 11, 2016 — DECIDED JANUARY 11, 2017

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Stephen Perron and Christine Jackson owned their home in Indianapolis subject to a note and mortgage serviced by J.P. Morgan Chase Bank. In 2012 the couple divorced, ending their 25-year marriage. They

blame Chase for contributing to the collapse of their marriage by failing to comply with its obligations under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617.

RESPA requires mortgage servicers to correct account errors and disclose account information when a borrower sends a written request for information. In 2011 Perron and Jackson sent two such letters accusing Chase of erroneously paying the wrong homeowner's insurer using $1,422 from their escrow account. The mistake was their own fault; they had switched insurers without telling Chase. When the bank learned of the change, it promptly paid the new insurer and informed the couple that their old insurer would send a refund check. The bank also told them to forward the refund check in order to replenish the depleted escrow.

They didn't. When the refund came, they pocketed the money instead. So the bank adjusted their monthly mortgage payment to make up the shortfall. When the couple refused to pay the higher amount, the mortgage went into default. Instead of curing, they sent Chase two letters requesting information under RESPA and demanding that *the bank* reimburse their escrow. In response Chase sent a complete account history, including a detailed escrow statement.

The couple then sued Chase claiming that its response was inadequate under RESPA and caused more than $300,000 in damages—including the loss of their marriage. They tacked on a claim for breach of the implied covenant of good faith and fair dealing. The district judge entered summary judgment for Chase.

We affirm. Chase's response almost perfectly complied with its RESPA duties. To the extent that any requested information was missing, Perron and Jackson suffered no actual damages and thus have no viable claim. Nor did Chase breach the duty of good faith and fair dealing, assuming that Indiana would recognize the implied covenant in this context.

## I. Background

Perron and Jackson, a married couple, owned their home in Indianapolis subject to a 2003 note and mortgage. Chase became their loan servicer in 2005. Perron is a retired criminal investigator for the IRS; Jackson is an attorney who represents consumers fighting loan servicers. The dispute arises out of complications with the couple's mortgage. The story begins in 2009 with their failure to give Chase notice when they changed homeowner's insurers.

Like many mortgage servicers, Chase had the responsibility of paying the couple's home-insurance premiums from their escrow account. In March 2009 Perron and Jackson changed their home-insurance provider from Allstate to Homesite Insurance without telling Chase. By that time, however, the bank had already paid Allstate's $1,422 premium for that year. When the bank independently learned of the change, it promptly paid Homesite's premium from the escrow account. Chase then sent the couple a letter explaining the situation and instructing them to remit the refund check from Allstate to replenish their escrow.

Perron and Jackson received a refund check from Allstate but ignored Chase's instructions and deposited the money into a non-Chase account. This created an estimated escrow

shortfall of $802.28 for the upcoming year.[1] To make up the deficiency, Chase notified the couple that their monthly mortgage payment would rise from $1,432.15 to $1,499.01—an increase of $66.86 per month. The couple ignored this as well. From February 2010 to November 2010, they paid Chase only $1,469.20 each month. (The amount is puzzling. It's lower than the 2010 required monthly payment yet higher than the 2009 monthly payments. Perron and Jackson haven't explained why they paid this sum.)

In November 2010 Perron and Jackson reviewed their account information and decided that Chase had miscalculated their 2010 mortgage payments because of the "erroneous" escrow payment to Allstate in 2009—apparently forgetting that they had received and pocketed the refund check from Allstate despite Chase's instructions. To correct this "error," they called Chase and said they would remit $1,399.23 for their December 2010 mortgage payment—about $100 less than the required payment.

Chase received the partial payment and held it "in suspense"—that is, the bank held the payment without crediting it toward the couple's payment for that month. This put the mortgage into default, which in turn automatically withdrew the couple from Chase's electronic-payment

---

[1] Because escrow accounts are used to pay variable obligations, like home-insurance premiums or property taxes, the amount needed in an escrow account for a given year is estimated. *See generally* 12 C.F.R. § 1024.17 (2014) (regulations governing escrow accounts).

system. Perron and Jackson apparently didn't notice the default until their January 2011 payment was also past due.

As an aside, in late December 2010 and in the ordinary course, Chase sent the couple an escrow disclosure statement—an accounting of the money flowing into and out of their escrow and a calculation of any shortfall or surplus. The disclosure statement was accompanied by an escrow refund of $250.05. The refund was owed because the couple's property-tax liability was $418.02 less than estimated. This meant that even though the couple underpaid their mortgage by about $30 each month from February through November 2010, there was no actual shortfall in their escrow account for that year.

Back to the story of the default. In January 2011 Chase sent the couple a default notice and told them to remit a payment of $2,998.02—the full monthly payments for December 2010 and January 2011 plus a late fee. The notice also stated that the December 2010 partial payment currently held in suspense would be credited toward the amount needed to cure. Accordingly, the amount needed to bring the mortgage current was $1,659.72.

Instead of curing, the couple sent Chase a letter dated January 10, 2011, and labeled a "qualified written request" under RESPA. The letter accused Chase of improperly paying the $1,422 from their escrow in 2009. It also demanded that Chase return the money, undo the "improper" default, send account information, and identify the "entity" that received the $1,422 escrow payment. The letter also demanded information about the December 2010 partial payment that was held in suspense. Chase received the letter on January 25.

The bank responded by letter dated February 25 and in-
cluded two attachments: a detailed accounting of the loan's
payment history and an escrow analysis from 2007 through
2010. The letter stated that "[a]ny information or document
requested but not included with this package is unavailable
or considered proprietary[] and will not be provided." In the
meantime, the deadline for the couple's February mortgage
payment came and went; they did not pay.

Dissatisfied with Chase's response, the couple sent Chase
a second letter dated April 27, also labeled a "qualified
written request" under RESPA. This letter accused Chase of
failing to adequately respond to the first inquiry and reiter-
ated many of the demands they had made in the earlier
letter. It also demanded payment of $330,000 in damages.
Chase treated this request as a duplicate of the first and did
not respond.

This suit followed. Perron and Jackson allege that Chase
violated RESPA and the common-law duty of good faith and
fair dealing.[2] The district judge entered summary judgment
for Chase, concluding that no evidence showed that the bank
violated either its statutory or common-law duties.

## II. Analysis

We review the judge's summary-judgment order de no-
vo. *Kuttner v. Zaruba*, 819 F.3d 970, 975 (7th Cir. 2016). Sum-

---

[2] Jackson has since filed for bankruptcy, so the United States Bankruptcy
Trustee for the Southern District of Indiana is pursuing the suit in her
stead.

mary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] FED. R. CIV. P. 54(a). We'll take the common-law claim first because it's quite straightfor-ward; the RESPA claim requires a bit more explanation.

## A. Duty of Good Faith and Fair Dealing

Indiana does not recognize an implied duty of good faith and fair dealing in *every* contractual setting; instead, the state courts have recognized an implied covenant of good faith in the context of employment contracts, insurance contracts, and certain other limited circumstances—for example, when one counterparty stands in a fiduciary, superior, or special relationship to the other. *See Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015); *Paul v. Home Bank SB*, 953 N.E.2d 497, 504–05 (Ind. Ct. App. 2011); *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Here, the judge assumed without deciding that the good-faith duty exists in the mortgage-servicing context. We'll proceed on the same assumption.

---

[3] The district judge held that the material facts are undisputed because Perron and Jackson failed to include a section labeled "Statement of Material Facts in Dispute" in their brief as required by local rule. *See* S.D. IND. L. R. 56-1(b). Perron and Jackson challenge that holding, but the judge has broad discretion to enforce the local rules, *see Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994), and we see no abuse of discretion here.

A party violates the implied duty of good faith and fair dealing when, though not breaching the *express* terms of the contract, he nonetheless behaves unreasonably or unfairly. *Old Nat'l Bank*, 31 N.E.3d at 531. Perron and Jackson argue that Chase breached the duty by holding their December 2010 partial payment in suspense.

This argument rests on the couple's contention that Chase agreed to accept the reduced payment *in full satisfaction* of their December 2010 payment. Nothing supports that assertion. To the contrary, the mortgage contract contains standard language permitting the bank to accept a partial payment without waiving its right to enforce the terms of the loan: "Lender may accept any … partial payment insufficient to bring the Loan current, without waiver of any rights … ."

As a fallback argument, Perron and Jackson argue that Chase breached the duty of good faith by failing to apply their 2010 escrow refund toward their December 2010 mortgage payment. They're being disingenuous here: The account was already past due by the time the escrow refund was calculated, so even if Chase had applied those funds to the account, the late fees would already have accrued. And Perron and Jackson could themselves have used the escrow refund to pay the remaining balance owed on their December 2010 payment. They did not do so. Chase had no duty to do so for them.

## B. Real Estate Settlement Procedures Act

RESPA imposes certain duties on servicers of federally related mortgage loans. 12 U.S.C. § 2605(e); *see generally id.* § 2601. As relevant here, the statute requires loan servicers to

promptly respond to a "qualified written request" from a borrower seeking "information related to the servicing" of his loan or alleging that his account is in error. § 2605(e)(1)(A)–(B). The Act gives borrowers a cause of action against a servicer for actual damages suffered "as a result of" a servicer's failure to comply with these duties. § 2605(f)(1)(A); *see also Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 681 (7th Cir. 2011). Statutory damages of up to $2,000 are available if the borrower proves that the servicer engaged in a "pattern or practice of noncompliance" with its RESPA duties. § 2605(f)(1)(B). Successful plaintiffs may also recover costs and attorney's fees. § 2605(f)(3).

"[T]he statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Rather, the statute covers only written requests alleging an account error or seeking information relating to loan servicing. "Servicing" is a defined term, which limits the scope of the loan servicer's duty to respond. "Servicing" means "receiving any periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts … , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required" by the terms of the loan. § 2605(i)(3). So a qualified written request can't be used to collect information about, or allege an error in, the underlying mortgage loan. *Medrano*, 704 F.3d at 666–67; *see also Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413–14 (4th Cir. 2015).

If a loan servicer receives a valid qualified written request, RESPA requires it to take the following actions, but

only "if applicable": (A) "make appropriate corrections in the account of the borrower"; (B) after investigating the account, "provide the borrower with a written explanation or clarification" explaining why the account is correct; or (C) "provide the borrower with … [the] information requested by the borrower" or explain why it is "unavailable." § 2605(e)(2)(A), (B) & (C); *see also Catalan*, 629 F.3d at 680. The statute also requires the servicer to provide the contact information of an employee who can provide further assistance. § 2605(e)(2)(C).

The couple's first letter to Chase requested information about their payments to their account; Chase's application of those payments to principle, interest, and escrow; and the recipients of escrow funds. This was enough to trigger Chase's response duties under RESPA. Chase's response *almost perfectly* complied with its duties under § 2605(e)(2). The bank provided a complete account history showing all of the couple's monthly payments; the application of those payments to principal, interest, and escrow; escrow payments; and a complete escrow accounting. What's missing is the identity of the insurance company that received the $1,422 escrow payment in 2009 (Allstate) and a statement of reasons why the December 2010 payment was properly held in suspense.

But of course Perron and Jackson already knew that information; the bank had supplied it in earlier correspondence. So even if Chase's response fell slightly short of full compliance as a technical matter, the couple cannot show that they suffered any actual damages "as a result of" any failure to comply with RESPA response duties. § 2605(f)(1)(A).

RESPA requires servicers to correct account errors and give requested information to borrowers. Perron and Jackson were not harmed by an uncorrected account error because there wasn't an error in the first place. Nor were they harmed by an information blackout. They knew that Chase had paid the $1,422 from the escrow account to Allstate and why. They also knew why the December 2010 payment was held in suspense. Their second letter merely duplicated the first, and to the extent that it requested an updated accounting, there was nothing new to send (the couple hadn't made any further payments). Simply put, Perron and Jackson weren't harmed by being in the dark because the lights were on the whole time.

A few additional words are in order regarding the couple's allegation that Chase's RESPA violation contributed to the dissolution of their marriage. Emotional-distress damages are recoverable under RESPA, *Catalan*, 629 F.3d at 696, but the breakdown of a marriage is not the type of harm that faithful performance of RESPA duties avoids. This kind of claimed harm is far too attenuated from the alleged violation to cross the proximate-cause threshold. *See* RESTATEMENT (SECOND) OF TORTS § 281 cmt. f (1965) ("Where the harm which in fact results is caused by the intervention of factors or forces which form no part of the recognizable risk involved in the actor's conduct, the actor is ordinarily not liable.").

Accordingly, to the extent that Chase's response was technically incomplete, no reasonable fact finder could conclude that Perron and Jackson suffered any actual damages *as a result of* that shortcoming.

Finally, Perron and Jackson have failed to produce evidence showing a pattern or practice of RESPA noncompliance, so they have no viable claim for statutory damages. The best they can muster is a pair of district-court cases holding Chase liable for RESPA violations. *See Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 731 (S.D. Ohio 2014); *Walton v. Chase Home Fin. LLC*, No. 1:11-cv-00417-JMS-MJD, 2012 WL 6596879 (S.D. Ind. Dec. 18, 2012). Two examples of similar behavior—in different states, separated by a handful of years, and with no evidence of coordination—isn't enough to support recovery of statutory damages.

AFFIRMED.