In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1770

KELLY JEAN LINDERMAN,

*Plaintiff-Appellant,*

*v.*

U.S. BANK NATIONAL ASSOCIATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-00104-LJM-DML — **Larry J. McKinney**, *Judge.*

ARGUED MARCH 28, 2018 — DECIDED APRIL 10, 2018

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Kelly Jean Floyd bought a home in 2004 and lived there with her ex-husband, their four children, and her parents. In June 2013 her mother asked her to move out to reduce intra-family conflicts. Floyd left—and she also stopped paying the loan that is secured by a mortgage on the house. A few months later her mother departed (her father had died years earlier), leaving the house occupied by a single daughter, who moved away in May 2014.

The unoccupied structure was vandalized; thieves removed its copper pipe and wiring. U.S. Bank, which owns the note and mortgage, started foreclosure proceedings in March 2014; Floyd asserts that she was not notified. A default judgment was entered, then vacated in June 2015 at her request. (The parties have not told us what has happened in the foreclosure case since then.) In 2014 Floyd remarried and took the name Linderman, which we use from now on. She has divorced the new husband and has never reoccupied the home (or resumed paying off the loan)—though in August 2015, with the aid of an inheritance, she did buy another house nearby. She lives in that house today.

The 2014 vandalism produced insurance money that was sent to the Bank, to be held in escrow for use in making repairs or as additional security. Linderman hired a home-repair contractor, and early in 2015 the Bank disbursed $10,000 from the escrow toward the cost of repairs. The contractor abandoned the job in April 2015, however, telling Linderman that it was not confident that she could pay the full cost of its work. The house was vandalized twice more that spring, and a storm damaged the roof in June 2015.

Linderman has not hired a replacement contractor or asked the Bank to disburse additional funds from the escrow. But she did send the Bank a letter, dated September 5, 2015, asking about the status of the loan and particularly about how the insurance money was being handled. The Bank sent a response dated September 25. Asserting that she had not received that response, Linderman filed this suit under the Real Estate Settlement Procedures Act, which the parties call RESPA and we call the Act.

The district judge assumed that the letter met the definition of a "qualified written request", 12 U.S.C. §2605(e)(1)(B), and further assumed that a "servicer" (another defined term) must ensure that its response is received. We do not decide whether either assumption is correct; the second is questionable given 12 C.F.R. §1024.11, which says that mailing a timely and properly addressed response satisfies the Act whether or not the response is received. (The statute is silent on this issue.) Even with the benefit of these two favorable assumptions, Linderman lost, because a remedy depends on proof of "actual damages". 12 U.S.C. §2605(f)(1)(A). The district judge found that Linderman's non-receipt of the information could not have caused or aggravated any of her injuries. 242 F. Supp. 3d 764 (S.D. Ind. 2017).

The dates we have mentioned show why the district court reached this conclusion. Only Linderman's divorce from her new husband occurred after September 2015, but the events that led to the divorce (inability to find an affordable place to live, disagreements about parenting styles, Linderman's deteriorating mental health) predated the letter to the Bank. Here are a few more dates: in October 2014 Linderman saw a property-preservation company (which she had not hired) carting things away from the house; in July 2015 the City of Indianapolis began to send Linderman notices that the house had become a nuisance and demanding that she take steps to secure and repair it to building-code requirements (she estimates that she has spent $5,000 responding to the City's demands); in August 2015 Linderman entered treatment for depression and anxiety. None of these events can be traced to non-receipt of the Bank's letter in late September 2015.

Still, Linderman asserts, the lack of a response from the Bank has aggravated her problems. She does not explain how. The lack of *money* disbursed from the escrow may be a cause of continuing loss, if she cannot afford to repair or secure the house. Similarly, the house's condition could affect her mental well-being. Linderman asserts that she "began to feel more anxious and depressed as [she] watched [her] home continue [to] deteriorate". Yet the Act does not require a servicer to pay money in response to a written request.

The Act requires a servicer to correct errors in its records (§2605(e)(2)(A)) or provide appropriate information if no error needs fixing (§2605(e)(2)(B), (C)). It requires the servicer to refrain, for 60 days, from taking steps that would jeopardize the borrower's credit rating (§2605(e)(3)). Linderman does not accuse the Bank of violating the rule about credit reports and does not explain how earlier access to the Bank's description of how the account has been handled could have helped her. Nor do we see how lack of an adequate response, as opposed to the ongoing foreclosure and need of money for repairs, could have contributed to her mental issues. And some of her asserted injuries, such as the breakdown of her marriage, are outside the scope of the Act. *Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017) ("the breakdown of a marriage is not the type of harm that faithful performance of RESPA duties avoids").

A focus on federal rules can distract people (including lawyers) from the more mundane doctrines of state law that may offer greater prospect of success. The contract between Linderman and the Bank, not federal law, determines how insurance proceeds must be handled and when the Bank must disburse money from the escrow to make repairs. The

Act does not require servicers to explain the details of contracts (or contract law) to customers or their lawyers. Contract law also governs the arrangement between Linderman and the repair firm that walked in April 2015; if the contract required the firm to finish the job, Indiana law would supply a remedy. Likewise Indiana law (rules of conversion, replevin, and trespass) could provide relief against the company that may have taken harmful steps in October 2014. Linderman may even have a claim against her mother, who did not pay the loan after Linderman moved out. (Linderman told the district judge that she believed that her mother would repay the loan, though she does not say that her mother promised to do so or that she took any step to add her mother to the account with the Bank.) Yet she does not pursue any of these theories. The sole claim in this suit is that the Bank injured her by not adequately responding to her letter. That claim fails for the reasons we have given.

AFFIRMED