In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 22-1340

MICHAEL LEE HUNTER,

*Plaintiff-Appellant*,

*v.*

KELLY MUESKE and TYSHEME WALKER,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-CV-1500 — **William E. Duffin**, *Magistrate Judge*.

———————

ARGUED OCTOBER 31, 2022 — DECIDED JULY 17, 2023

———————

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Michael Hunter was an inmate at Redgranite Correctional Institution, a Wisconsin state prison. While there, he suffered a vicious beating at the hands of his cellmate, Donald Patterson, shortly after Patterson was reassigned to a new cell. Hunter brought this action under 42 U.S.C. § 1983 against Redgranite officials Kelly Mueske and Tysheme Walker, alleging that they were deliberately

indifferent to his reports that Patterson had threatened him in the months leading up to the attack. The district court granted summary judgment for both defendants. Because Hunter has offered no facts from which a reasonable jury could find that Walker acted with deliberate indifference or that Mueske's conduct caused his injury, we affirm.

## I.     Background

### A.  Hunter and Patterson's Relationship

Hunter was housed in a general-population wing of "Unit H" at Redgranite. Patterson became Hunter's cellmate on March 8, 2017, and remained so through December 6, 2017.

Patterson had a reputation at Redgranite. Correctional officer Robert Wilcox described him as a "lifer inmate" and a "violent individual." Wilcox testified that his and other Redgranite staff's interactions with Patterson were "fairly negative." Indeed, Wilcox believed that Patterson should not have been housed in general population at all.

So perhaps it is unsurprising that Hunter and Patterson had a rocky relationship as cellmates. Their disagreements started out small. For instance, Patterson got mad when Hunter had gas or breathed too loudly. But things soon escalated. On multiple occasions, Patterson told Hunter that he would beat him with a cribbage board while he slept. He also threatened to "whoop" Hunter's "ass" and repeatedly warned Hunter that Hunter needed to find a new cellmate. According to Hunter, it was a "good week" if Patterson was only angry at him for "part of each day."

The relationship was not all bad, though. Hunter and Patterson sometimes played games, talked about sports, and even hugged. But ultimately, Hunter denies that he and

Patterson ever truly got along. He claims that he constantly feared for his life, and that he simply tried to keep Patterson happy to avoid any violent confrontations.

### B. Hunter's Complaints

Hunter tried to bring Patterson's threats to the attention of Mueske, who was Redgranite's unit supervisor for Unit H. In that capacity, Mueske had final say over all housing assignments in the unit. Hunter sent Mueske several informal complaint forms describing Patterson's threats and requesting a cell reassignment. It is undisputed that Mueske received at least one of these forms.

According to Hunter, Mueske did not take any action in response to his concerns. Eventually, he confronted Mueske in person about his outstanding complaints. Per Hunter, Mueske dismissed him and stated that she discards any complaints she cannot read.

Frustrated by the lack of response from Mueske, Hunter turned to Walker for help. Walker was a correctional sergeant in Unit H; he did not have any authority over housing assignments. Hunter told Walker about Patterson's threats and said that he could not be cellmates with Patterson any longer. Walker recommended that Hunter fill out an Inmate Complaint form. An Inmate Complaint is a formal complaint submitted by an inmate after a failed attempt to resolve an issue with the appropriate staff member.

Hunter filled out an Inmate Complaint form and gave it to Walker, who recommended that Hunter include Patterson's threat to hit him with a cribbage board. Then, Walker told Hunter to place the form in a box designated for Inmate Complaints. The Inmate Complaint form filled out by Hunter

is dated August 9, 2017, and it specifically references Patterson's cribbage-board threat and Walker's assistance. Walker typically notifies his superiors and drafts an incident report when he learns of threats between inmates, but he did not do so in this case.

### C. The Fight and Aftermath

Wilcox decided to move Patterson out of Unit H on December 6, 2017. It was not due to Hunter's complaints, however. Rather, a new inmate was scheduled to move into the unit, and an existing inmate had to be moved out. Wilcox selected Patterson due to his negative interactions with Redgranite staff.

On the day of Patterson's move, Hunter decided to bid him farewell. Hunter testified that he wanted Patterson to know that there was "no bad blood" between them. He added that, despite their up-and-down relationship, he and Patterson "had a connection," and that he wanted to tell Patterson that he loved him. And so, Hunter, who was in a common area at the time, approached Patterson, who was in their cell.

What happened next is disputed. Hunter claims that Patterson flew into a rage, calling Hunter a "rat" and accusing him of causing Patterson's reassignment. Patterson denies this. He testified that Hunter called him various derogatory terms, including the N-word. Whatever was said, the verbal altercation turned physical. Patterson violently battered Hunter and stomped on his head. The fight left Hunter with permanent injuries and triggered his post-traumatic stress disorder from his time in the military. The altercation was captured on video.

### D. Proceedings Below

The district court granted summary judgment against Hunter and in favor of Mueske and Walker with respect to Hunter's § 1983 claims. *Hunter v. Mueske*, No. 18-CV-1500, 2022 WL 227534 (E.D. Wis. Jan. 26, 2022). As to Mueske, the district court recognized that factual questions existed as to whether Mueske had exhibited deliberate indifference to the risk Patterson posed to Hunter, but it determined that Hunter had failed to raise any facts to establish causation. The court reasoned that the fight occurred several months after Hunter's last communication with Mueske and only happened because Hunter took it upon himself to approach Patterson. *Id.* at *5. And as to Walker, the court held that no reasonable jury could find that he was deliberately indifferent to Hunter's plight, given his assistance to Hunter in the preparation of the Inmate Complaint form. *Id.*

## II.     Legal Standard and Standard of Review

We review the district court's grant of summary judgment *de novo*. *REXA, Inc. v. Chester*, 42 F.4th 652, 661–62 (7th Cir. 2022). A court "shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are facts that "might affect the outcome of the suit," and a dispute as to those facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding if a genuine dispute of material fact exists, we "view the evidence and draw all [reasonable] inferences" in favor of the non-moving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

### III.    Analysis

Section 1983 confers a private right of action against government officials who, acting under color of state law, deprive a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990). Hunter claims that Mueske and Walker deprived him of his rights under the Eighth Amendment, which prohibits the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII.

It is well settled that the Eighth Amendment requires correctional officials to protect inmates from certain dangers posed by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That does not mean, however, that a constitutional violation occurs every time an inmate gets into a fight. Rather, only "deliberate indifference" to an inmate's wellbeing is actionable: "[a] prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

Thus, a deliberate-indifference claim under the Eighth Amendment requires the following three elements: (1) there must be a risk of harm to the plaintiff that is so objectively serious as to be "excessive" (and that risk must in fact materialize); (2) the defendant must "know" of the risk (put differently, he must possess subjective awareness that the risk exists); and (3) the defendant's response to the risk must be so

inadequate as to constitute "disregard" of (or deliberate indifference toward) the risk. *See id.* In addition, a fourth element exists: (4) the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury. *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

We assume without deciding that the first two elements are satisfied here—namely, that Patterson's threats of violence created an objectively serious risk of grave harm to Hunter (which eventually materialized), and that Hunter's written and verbal complaints to Mueske and Walker placed each on subjective notice of that risk. But Hunter's claims falter on the third and fourth elements: he cannot show that Walker was deliberately indifferent to any risk of harm, and he cannot show that any deliberate indifference on Mueske's part caused his injury. We address each in turn.

## A. Deliberate Indifference

In order to survive summary judgment, Hunter must produce evidence that would allow a reasonable jury to find that Mueske and Walker were deliberately indifferent to the risk Patterson posed. Hunter bears a hefty burden here. Deliberate indifference is more than mere negligence or carelessness: it is "something approaching a total unconcern" for inmate safety. *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). Thus, Hunter cannot succeed merely by showing that Mueske and Walker failed to "choose the best course of action" in addressing Patterson's threats. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). So long as they took measures reasonably

calculated to address the risk Hunter faced, they cannot be held liable under § 1983, even though they ultimately failed to prevent his injury. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Turning first to Mueske, assuming she was on notice that Patterson posed a serious risk to Hunter (and there are facts in the record to support such an inference), a rational jury certainly could find that she was deliberately indifferent to that risk. According to Hunter, Mueske did nothing at all about his housing situation, despite his numerous written complaints. Obviously, doing absolutely nothing about a known serious risk constitutes deliberate indifference. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015).

The story is different for Walker. The undisputed facts demonstrate that he was not deliberately indifferent to Patterson's threats. Rather, he proactively helped Hunter address those threats. According to Hunter's own version of events, after Mueske ignored his concerns about Patterson, he shared those concerns with Walker. In response, Walker told him to file an Inmate Complaint. Walker also read over Hunter's Inmate Complaint form and recommended that he include Patterson's threat to beat him with a cribbage board. Then Walker told Hunter where to file the form to ensure it reached the proper officials. Walker's demonstrated concern for Hunter's wellbeing is a far cry from the sort of callous disregard for inmate safety necessary to support a deliberate-indifference claim. *Rosario*, 670 F.3d at 822 (affirming summary judgment for officers on deliberate-indifference claim where record showed they acted with "compassion"); *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) (holding prison officials could not be liable for deliberate indifference where

the "record [was] replete with instances of concern, not indifference").

In fact, Walker did all that reasonably could have been expected of him, given that Hunter's housing complaints were outside the purview of his primary job duties. As a correctional sergeant, Walker certainly was charged with keeping inmates safe, but he had no authority over cell assignments and no power to reassign inmates. Simply put, he cannot be held liable for failing to do something he had no authority to do. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights … Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."); *Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018) (holding prison psychologist was not liable for delay in processing, and denial of, plaintiff's request for hormone-therapy treatment, where there was "no evidence" the psychologist could have "sped up" the process or "influenced" the final decision). And there is no evidence that Walker could have taken any additional action to influence or expedite resolution of Hunter's concerns.

Fighting this conclusion, Hunter contends that Walker was deliberately indifferent by failing to create an incident report notifying his supervisors of Patterson's threats. But Walker's mere failure to follow (in Hunter's view) the "best course of action" does not mean that he acted with deliberate indifference. *Peate*, 294 F.3d at 882. Hunter does not have a constitutional right to "the most intelligent, progressive, humane, or efficacious prison administration." *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995). Since Walker responded reasonably to the risk of which he was aware, he

cannot be held liable for Hunter's injuries. Under our cases, the possibility that he could have done more does not evince deliberate indifference.[1] *See Lee*, 533 F.3d at 510–11 (holding prison officials were not deliberately indifferent to asthmatic inmate's exposure to secondhand smoke, even though they did not reassign his smoking cellmate or prevent the prison commissary from selling cigarettes to inmates in nonsmoking cells).

Hunter also argues that Walker acted unreasonably because, despite knowing that Hunter's prior complaints to Mueske had been ignored, he advised Hunter to file another complaint. But the mere fact that Mueske did not take action on Hunter's informal complaints did not necessarily mean that his Inmate Complaint also would be ignored. Indeed, Inmate Complaints are *meant* to be used when informal complaints have failed, and they are handled by personnel other than Mueske. Far from being unreasonable, Walker's recommendation that Hunter fill out an Inmate Complaint form was an appropriate response to Hunter's specific predicament. There is no evidence that Walker was aware that Hunter's Inmate Complaint would be ignored or not taken seriously; he was entitled to rely on the professional judgment and competence of the officials charged with processing those complaints. And there is no evidence that, at the time Hunter

---

[1] Hunter also argues that Walker's job duties required him to file an incident report. Even if this is true, Walker's failure to follow Redgranite prison procedures is not a constitutional violation in and of itself. *Est. of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 532 n.3 (7th Cir. 2000); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or … departmental regulations[.]").

informed Walker of Patterson's threats, Patterson was imminently about to act on those threats. Indeed, Patterson did not attack Hunter until December 6, 2017, almost four months after Hunter submitted his Inmate Complaint form. Thus, Walker responded reasonably to the risk of which he was aware. *See Borello v. Allison*, 446 F.3d 742, 749–50 (7th Cir. 2006) (holding prison officials were not liable for attack on plaintiff by cellmate, where officials reasonably relied on psychiatrist's determination that cellmate could safely return to cell, plaintiff did not seem to be in imminent danger, and attack did not occur until a week after plaintiff's complaints about cellmate). And the district court properly entered summary judgment in his favor.

## B. Causation

Returning to Mueske, even if a reasonable jury could find the other elements of deliberate indifference, Hunter's claim against her fails for lack of causation. In assessing causation in § 1983 cases, we look to general principles of causation from tort law. *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012). At summary judgment, Hunter must produce evidence sufficient to persuade a reasonable jury that two types of causation exist: causation-in-fact and proximate causation (also known as legal causation). *Id.* We focus on the latter here. Under the doctrine of proximate causation, a defendant is liable only for those harms she foreseeably risked by her wrongful actions. Dan B. Dobbs et al., *The Law of Torts* § 198 (2d ed. 2023) ("Dobbs"); *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) (stating that proximate causation exists when "the [plaintiff's] injury is of a type that a reasonable person would see as a likely result of his or her conduct") (cleaned up). Put differently, a defendant will be

held to answer only for those harms the risk of which made her conduct wrongful in the first place. Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 29 (Am. L. Inst. 2010). So when a plaintiff's injury could not reasonably have been foreseen by the defendant (*i.e.,* when it was beyond the scope of the risk generated by the defendant's conduct), there is no proximate causation and, thus, no liability. A corollary to these principles is the idea of "superseding cause": when the plaintiff's injury is caused not by a risk created by the defendant but by an unforeseeable intervening act, that act will operate to sever the defendant's liability. Dobbs § 204; *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837–38 (1996); *see Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017) ("Where the harm which in fact results is caused by the intervention of factors or forces which form no part of the recognizable risk involved in the actor's conduct, the actor is ordinarily not liable.") (quoting Restatement (Second) of Torts § 281 cmt. f (Am. L. Inst. 1965)).

We note that, in § 1983 cases, causation is typically a question best left for the jury. *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). But there are cases where proximate causation may be decided as a matter of law. And this is such a case, for no reasonable jury could conclude that Hunter's injury was within the foreseeable risk generated by Mueske's conduct.

Hunter claims that Mueske ignored his repeated requests that she exercise her authority over Unit H housing assignments to separate him and Patterson. To determine whether proximate causation might lie, we must ask what sorts of risks a reasonable person would foresee as a likely

result of Mueske's failure to act. *Luce*, 873 F.3d at 1012. By leaving Hunter in a cell with Patterson, Mueske created the foreseeable risk that Hunter would be left defenseless and Patterson would attack him while the two were housed in close quarters together. But that is not what happened here. The fight that caused Hunter's injuries occurred after Patterson had been reassigned to a new cell and was being moved (in other words, after Hunter had received the very relief he had been seeking from Mueske). And the fight happened only because Hunter approached Patterson of his own volition, near Hunter's open and unlocked cell, and initiated an interaction.[2] This harm was not within the foreseeable risk generated by Mueske's inaction. Mueske's failure to separate Hunter and Patterson as cellmates did not make it any more likely that Hunter would seek out interactions with Patterson as Patterson was moving out of their cell. *See* Dobbs § 198 (indicating that a defendant is liable

---

[2] Hunter and Patterson's interaction, including the ensuing physical altercation, was captured on video. The district court described the events as such: "The video is partially obscured, and there is no audio, so the court cannot know what was said. But whatever Hunter said provoked Patterson, resulting in the beating." *Hunter*, 2022 WL 227534, at *5. Hunter devotes significant energy to attacking the district court's use of the word "provoked," arguing that the court improperly weighed the evidence at summary judgment and blamed him for the fight. He argues that the district court's conclusion that he provoked the fight is at odds with Patterson's 2018 battery conviction arising out of the fight. We agree that the district court probably failed to view the video in the light most favorable to Hunter, as required at summary judgment. But ultimately, this issue is not material to our decision. While it is unclear who provoked the fight, the key and undisputed fact is that it was Hunter who approached Patterson, thereby initiating the interaction that led to the fight, after Patterson had been ordered to move out.

only for risks "create[d] or increase[d]" by her conduct); *see also Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 559–60 (7th Cir. 2006).

To put it differently, Hunter's deliberate choice to approach Patterson was an unforeseeable superseding cause of his injury that severs Mueske's liability. Mueske could not reasonably have predicted that Hunter would voluntarily approach Patterson while Patterson was being moved, especially since Hunter repeatedly made clear to Mueske that he feared Patterson and did not want to be around him. Hunter's injury was caused not by Mueske's conduct but by his own decision to place himself in harm's way. *See Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002) (stating that proximate causation "does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers"). We find persuasive the Eleventh Circuit's decision in the similar case of *Buckman v. Halsey*, No. 20-13596, 2021 WL 4127067 (11th Cir. Sept. 10, 2021) (per curiam). There, the plaintiff prisoner had been threatened by another inmate, and the defendant guard was aware of those threats. *Id.* at *1. At some point, the plaintiff initiated an altercation with the other inmate and sued to hold the guard liable for his injury. *Id.* The court rejected the claim, concluding that the guard's failure to protect the plaintiff from the other inmate was not the proximate cause of the plaintiff's injury, because the plaintiff himself had started the fight, even though he safely could have avoided the other inmate altogether. *Id.* at *3. Here, too, Hunter approached Patterson and initiated an interaction with him (even though it is not clear who started the physical fight). Hunter does not argue (nor does the record show) that he could not safely have avoided his cell

while Patterson was being moved out. *See also Hailey v. Kaiser*, 201 F.3d 447 (table), No. 99-7046, 1999 WL 1009614, at *2 (10th Cir. Nov. 8, 1999) (affirming summary judgment where plaintiff inmate initiated an altercation with fellow inmate, even though he "could have avoided" him). On these facts, Hunter's choice to approach Patterson "form[ed] no part of the recognizable risk involved in [Mueske's] conduct." *Perron*, 845 F.3d at 858 (quoting Restatement (Second) of Torts § 281 cmt. f).

To be clear, we do not suggest that Hunter is to blame for his injuries, far from it. We hold only that his decision to approach Patterson, and his resulting injury, were not within the scope of the foreseeable risk generated by Mueske's conduct. Therefore, Hunter has not created a genuine question of material fact as to causation, and the district court properly entered summary judgment for Mueske.

### IV.    Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.